UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RICHARD ANTON HEISE II,

                Plaintiff,

    -against-                         1:20-CV-0878 (LEK/ATB)

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK), *et al.*,

                Defendants.

---

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Pro se plaintiff Richard Anton Heise II brings this civil action against Defendants National Railroad Passenger Corporation ("Amtrak"), Lisa Hubbard ("Hubbard"), and Kevin Graham ("Graham") (collectively, "Defendants"). See Dkt. No. 30 ("Amended Complaint"). Presently before the Court is Defendants' motion to dismiss pursuant to 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure. See Dkt. Nos. 32 ("Motion to Dismiss"), 32-3 ("Defendants' Memorandum of Law"). Plaintiff has opposed the motion to dismiss, Dkt. Nos. 36 ("Opposition"), 36-1 ("Plaintiff's Memorandum of Law"), and Defendants have replied, Dkt. No. 39 ("Reply"). For the reasons that follow, the Court grants the Motion to Dismiss.

## II. BACKGROUND

### A. Factual History

The following factual allegations are assumed to be true. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 76 (2d Cir. 2015).

Plaintiff has been employed in the railroad industry since 2003. Am. Compl. ¶ 8. He has maintained his Locomotive Engineer's license since 2007, and is currently a Locomotive Engineer for Amtrak. Id. ¶¶ 3, 8.

In October 2011, Plaintiff applied for an open Passenger Engineer Trainee position with Amtrak. Id. ¶ 9. The job application listed two rates of pay: one for apprentice engineers and one for those who possessed experience and certification as a Locomotive Engineer under the federal regulations. Id. In December 2011, Plaintiff was invited to interview for the position. Id. ¶ 10. Mr. Kevin Graham, a Human Resources Manager, Mr. Richard Carroll, Road Foreman of Engines, and Mr. Richard Nunziato of the Brotherhood of Locomotive Engineers (the "Union") were present at the interview. Id. ¶¶ 6, 10. During the interview, the parties discussed the two separate rates of pay. Id. ¶ 11. In addition to having a higher pay, an applicant with the requisite experience and certification would have the same amount of vacation time that they would have been entitled to on their former railroad. Id. Plaintiff alleges that he asked the panel if they wanted to make a copy of his current engineer license and evidence of his prior experience, but the panel declined to do so. Id. Specifically, the panel explained that this could be resolved in training in Wilmington, Delaware if Plaintiff was offered a position. Id.

On December 13, 2011, Plaintiff reported for a preemployment physical and drug test. Id. ¶ 12. According to Plaintiff, that date should have been established as his seniority date under the collective bargaining agreement ("CBA") between Amtrak and the Union. Id. Instead, January 9, 2012 is listed as Plaintiff's seniority date under a different provision of the CBA. Id.

On December 20, 2011, Plaintiff received a formal offer letter from Mr. Graham. Id. ¶ 13. The offer letter listed the position as an "off corridor engineer trainee." Id. Plaintiff inquired with

2

Mr. Graham on why his position was listed as a "trainee." Id. Mr. Graham explained that all offer letters show the "engineer trainee" title, regardless of whether an engineer is an apprentice or a re-entry. Id. Plaintiff then signed and returned the offer letter on December 31, 2011. Id. In the time period between receiving the offer and signing it, Plaintiff spoke to several Amtrak managers and employees regarding the engineer training program and associated rates of pay, vacation, and seniority. Id. ¶ 14. According to Plaintiff, he learned that it had been past practice for Amtrak to state one rate of pay at the interview and then pay the lower apprentice rate until either the employee complained or the union remedied the issue. Id. Then, an employee would receive a check for back wages for the difference, and would also receive the correct seniority date and number of vacation weeks. Id.

On January 9, 2012, Plaintiff entered Amtrak's locomotive engineer training program in Wilmington, Delaware. Id. ¶ 15. On this day, Amtrak sent a Labor Relations Manager to talk to Plaintiff and his entire class regarding their new jobs, their rates of pay, and their CBAs. Id. Plaintiff, and two other engineers, approached the Manager and wanted to discuss their rate of pay, vacation entitlement, and seniority. Id. The Manager collected their information, and responded that she would review the information and get back to them. Id. Plaintiff alleges that neither he nor the other engineers received any type of response from the Manager. Id.

Furthermore, during training, Plaintiff was instructed that these pay disputes are very common, and that Plaintiff should not spend his time in Wilmington on trying to remedy the pay disparity. Id. ¶ 16. Plaintiff was told by Amtrak managers that he would be paid correctly in the future. Id. Plaintiff was also reminded that under the CBA, he was on probation until 90 days after his graduation from the program. Id.

3

On March 14, 2012, Plaintiff graduated from the program and commenced his 90-day probation period. Id. ¶ 17. During this period, Plaintiff was an at-will employee and not a member of the Union. Id. ¶ 16. On April 15, 2012, a supervisor telephoned Plaintiff to inform him that he received an email that would have adjusted Plaintiff's pay to the correct rate, and would have provided the correct vacation entitlement and seniority date. Id. ¶ 19. The supervisor collected Plaintiff's evidence and submitted them for approval. Id. Approximately one week later, the supervisor informed Plaintiff that the decision to correct his rate of pay, vacation entitlement, and seniority date was reversed, and Plaintiff was now back to being an apprentice engineer. Id. ¶ 20.

On April 22, 2012, Plaintiff was approached by Amtrak Assistant Superintendent Lisa Hubbard. Id. ¶ 21. Ms. Hubbard reminded Plaintiff that he was a student engineer and could be dismissed for any reason. Id. Plaintiff interpreted Ms. Hubbard's remarks as a threat for trying to remedy his dispute. Id.

Finally, on June 15, 2012, Plaintiff's probationary period was over and he became a member of the Union. Id. ¶¶ 16, 22. In August 2012, Plaintiff contacted Mr. Nunziato to file a grievance about the dispute, but Mr. Nunziato refused to handle it. Id. ¶ 23. Between September 2012 and 2015, Plaintiff was able to file grievances with Amtrak and the Union, and he eventually submitted the case to the First Division of the National Railroad Adjustment Board in Chicago on November 15, 2017. Id. ¶ 24. Plaintiff also reported his concerns to various internal and external government agencies. Id. ¶¶ 25–28.

On September 24, 2018, the First Division of the National Railroad Adjustment Board dismissed Plaintiff's claim because it was untimely filed under the CBA. Id. ¶ 30; Am. Compl.

4

Ex. 1.[1] Plaintiff now alleges that: (1) Defendants breached a contract[2]; (2) Defendants fraudulently misrepresented the employment position and offer letter; (3) Defendants violated their duty of good faith and fair dealing in contracts; (4) Defendants were unjustly enriched; (5) Defendants' conduct and contract were unconscionable; and (6) Defendants' conduct created promissory and equitable estoppel. See Am. Compl. ¶¶ 32–37.

### B. Procedural History

On June 27, 2020, Plaintiff filed his Complaint against Defendants in New York Supreme Court, Rensselaer County. See Dkt. No. 2. On August 5, 2020, the action was removed to this Court. See Dkt. No. 1. Subsequently, Defendants filed their first motion to dismiss. See Dkt. No. 6. On September 14, 2020 Plaintiff filed a motion to amend the Complaint. See Dkt. No. 22. On March 23, 2021, this Court granted the motion to amend, dismissed the motion to dismiss without prejudice, and instructed Defendants to refile a single, collective motion to dismiss. See Dkt. No. 29. On April 2, 2021, Plaintiff filed his Amended Complaint. Am. Compl. On April 16, 2021, Defendants filed their motion to dismiss. Motion to Dismiss.

## III. LEGAL STANDARD

---

[1] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court may consider the following matters outside the four corners of the complaint: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." Lane v. Tilbe, No. 18-CV-0438, 2018 WL 6289668, at *2 (N.D.N.Y. Dec. 3, 2018) (internal citations omitted) (Kahn, J.).

[2] It is unclear whether Plaintiff is referring to the CBA, his offer letter, or both. The Court does not need to resolve this ambiguity.

Any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). Courts will assess whether judgment on the pleadings is warranted "by the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted." Rubeor v. Town of Wright, 191 F. Supp. 3d 198, 202–03 (N.D.N.Y. 2016) (Kahn, J.). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Put another way, a claim is plausible if it is supported by "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556, 127 S.Ct. 1955. In assessing whether this standard has been met, courts must "accept as true all allegations in the complaint." Houston v. Colvin, No. 12-CV-3842, 2014 WL 4416679, at *4 (E.D.N.Y. Sept. 8, 2014) (quoting Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008)). "[B]ecause [the] [Defendants are] the moving party, the Court will view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of [the] [plaintiff]." Am. Mgmt.

6

Servs., Inc. v. Ray Weiner, LLC, No. 12-CV-947, 2014 WL 381470, at *1 (D. Conn. Feb. 3,

2014) (citing Madonna v. U.S., 878 F.2d 62, 65 (2d Cir. 1989)).

## IV.   DISCUSSION

Defendant raises three separate arguments: (1) Plaintiff's claims are preempted by the

Railway-Labor Act ("RLA"); (2) Plaintiff's claims are time-barred; and (3) many of Plaintiff's

claims are redundant to his breach of contract claim. Defs.' Mem. of Law at 7–16. The Court

need not address arguments (1) and (3) because the Court agrees that Plaintiff's claims are time-

barred.[3]

### A.  Statute of Limitations

The Court begins by noting that some of Plaintiff's claims have varying statutes of

limitations. See, e.g., Biehner v. City of New York, No. 19-CV-9646, 2021 WL 878476, at *7

(S.D.N.Y. Mar. 9, 2021) ("The statute of limitations for a breach of contract claim is six years.")

(citing N.Y. C.P.L.R. § 213(2)), Koral v. Saunders, No. 17-CV-7011, 2020 WL 6385323, at *6

(E.D.N.Y. May 25, 2020), report and recommendation adopted, 2020 WL 5810119 (E.D.N.Y.

---

[3]  The Second Circuit recently reiterated that "where a question of statutory (non-Article III) jurisdiction is complex and the claim fails on other more obvious grounds, this Court can assume hypothetical jurisdiction in order to dismiss on those obvious grounds." Miller v. Metro. Life Ins. Co., 979 F.3d 118, 123 (2d Cir. 2020). RLA preemption/preclusion is a jurisdictional issue, see, e.g., Davies v. Am. Airlines, Inc., 971 F.2d 463, 465 (10th Cir. 1992), Said v. Nat'l R.R. Passenger Corp., 390 F. Supp. 3d 46, 52 (D.D.C. 2019), aff'd, 815 F. App'x 561 (D.C. Cir. 2020), and can be complex at times, see, e.g., McElveen v. CSX Transp., Inc., No. 95-CV-1632, 1996 WL 481105, at *2 (D.S.C. Aug. 21, 1996), Union Pac. R. Co. v. Pratt & Tobin, P.C., No. 99-CV-2030, 1999 WL 760417, at *2 (D. Kan. Sept. 21, 1999); cf. Roache v. Long Island R.R., 487 F. Supp. 3d 154, 167 (E.D.N.Y. 2020) (collecting cases). Thus, the Court finds it appropriate to assume for purposes of this motion that the RLA does not preempt or preclude Plaintiff's claims.

Additionally, because Plaintiff's claims are time-barred, the Court need not decide the redundancy of Plaintiff's claims.

Sept. 30, 2020) ("Under New York law, the statute of limitations for fraudulent misrepresentation is the same as common law fraud, the greater of six years from the date the fraud was perpetrated or two years from the date of plaintiff's actual or reasonably possible discovery of the fraud.") (citing N.Y. C.P.L.R. § 213(8)), Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, No. 05-CV-9016, 2010 WL 11586616, at *2 (S.D.N.Y. Mar. 23, 2010) (applying either three-year or six-year statute of limitations for negligent misrepresentation claims depending on the nature of the claim), Flight Sciences, Inc. v. Cathay Pacific Airways Ltd., 647 F. Supp. 2d 285, 288 (S.D.N.Y.2009) ("Claims for breach of the covenant of good faith and fair dealing and for unjust enrichment are . . . subject to a six-year statute of limitations") (collecting cases), Kotler v. Charming Shoppes Inc., No. 11-CV-3296, 2012 WL 291512, at *2 (S.D.N.Y. Jan. 31, 2012) ("Under New York law, the statute of limitations for promissory estoppel claims is six years."). Still, there appears to be no disagreement that Plaintiff was aware of his injury since 2012. See Am. Compl. ¶¶ 15–22; Pl.'s Mem. of Law at 5[4]; Defs.' Mem. of Law at 13–14. Because Plaintiff first filed his suit in 2020, more than six years have passed and his claims should be time-barred. However, Plaintiff raises the following in his briefing:

> A review of the evidence will show that plaintiff's own union plus the carrier through collusion frustrated those attempts by ignoring grievances and letters from 2012 through 2015 until pushed to answer them by the OIG. That fact demonstrates the tolling of the statutes was due to no fault of my own as I exerted every reasonable effort to settle this dispute and was prevented from doing so.

---

[4] For the sake of clarity, citations to Plaintiff's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

8

One of the more complicated matters of fact and law present in this dispute is in regard to the applicable statute of limitations for the contractual nature of this dispute. Many of the cases the defendant's (sic) cited concern only one harm to the employee. For example, a dismissed employee can find another job at another company or railroad if terminated. I am still working at the carrier and the harm continues to me until my retirement date. The facts of my dispute differ in the fact that as I have demonstrated my economic injury started in my probationary period and continued through 2017 with the difference in pay claims. Part of that time I was covered under the CBA and had to exhaust procedures under the RLA. Does the statute reset because of having to exhaust the RLA procedures first before coming to court? Does the Ledbetter rule apply where each paycheck in bad faith resets the statute? As I discussed earlier, my vacation time and seniority will be an economic injury to me for the rest of my career until I retire. Does the doctrine of continuing wrongs apply here? "To qualify for equitable tolling, the plaintiff must establish that extraordinary circumstances prevented her from filing her claim on time and that she acted with reasonable diligence throughout the period she seeks to toll." See Parada v. Banco De Venezuela, C.A 753 F.3d 62, 71 (2d Cir. 2014). Does being required to follow the RLA to the end qualify? Each bad faith discriminatory paycheck resets the statute according to my understanding of the Ledbetter rule. Under the Westlaw discussion under Lama v. Malik 58 F. Supp 3d 226, the discussion on tolling centers around cases where the plaintiff is prevented from filing despite exercising a level of diligence. A review of all the exhibits will undoubtedly establish that I was the party that acted the most reasonable and was prevented by the conduct of the defendants'(sic) and the mechanisms of the RLA which required I exhaust all RLA grievance mechanisms.

Pl.'s Mem. of Law at 17–18.

The Court is reminded that it must afford pro se plaintiffs "special solicitude" before granting motions to dismiss. Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir.1994). "A document filed pro se is 'to be liberally construed.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "This policy of liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the

part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir.2006) (internal quotations and modifications omitted). Therefore, courts read pro se filings "to raise the strongest arguments that they suggest." Id. at 474.

Here, the Court reads Plaintiff's brief to suggest the following arguments: (1) the continuing-violation doctrine tolls the statute of limitations; (2) Plaintiff qualifies for equitable tolling; (3) equitable estoppel relieves Plaintiff of the statute of limitations; (4) the statutes of limitations do not run until Plaintiff exhausted the RLA's procedures; and (5) the Ledbetter Fair Pay Act is applicable here. For the reasons that follow, none of the arguments save Plaintiff's claims from being time-barred.

### 1. Continuing-Violation

The Court begins by reviewing the continuing-violation doctrine. Under this doctrine, "where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously." Stalis v. Sugar Creek Stores, Inc., 744 N.Y.S.2d 586, 587 (4th Dep't 2002) (internal quotation marks omitted). Furthermore, "New York courts have explained that tolling based on the doctrine 'may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct[.]'" Miller v. Metro. Life Ins. Co., 979 F.3d 118, 122 (2d Cir. 2020) (quoting Salomon v. Town of Wallkill, 107 N.Y.S.3d 420, 422 (2d Dep't 2019)). "The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs." Henry v. Bank of Am., 48 N.Y.S.3d 67, 70 (1st Dep't 2017) (citations omitted). This Court has also noted that the

continuing-violation doctrine is considered "disfavored" in the Second Circuit and only to be applied "upon a showing of compelling circumstances." Beattie v. Farnsworth Middle Sch., 143 F. Supp. 2d 220, 227 (N.D.N.Y. 1998) (Kahn, J.).

When viewed in the light most favorable to Plaintiff, the Amended Complaint does not allege a separate and distinct wrong that occurred each time Plaintiff received his pay check. Plaintiff instead alleges wrongs (specifically, lost wages, lost vacation time, and an incorrect seniority date) that occurred during his probationary period, and that the effects of these wrongs continue to this day. Am. Compl. ¶¶ 38–40. Thus, Plaintiff's injury "represent[ed] the consequences of [that allegedly] wrongful act[ ] in the form of continuing damages, and was not an independent wrong in itself." Salomon, 107 N.Y.S.3d at 422 (internal quotation marks omitted); see also Gross v. Nat'l Broad. Co., 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002) ("alleged failures to compensate adequately . . . cannot form the basis for a continuing violation claim"). Moreover, Plaintiff has not demonstrated that compelling circumstances exist here. As a result, the continuing-violation doctrine did not toll the limitations period for Plaintiff's claims.

### 2. Equitable Tolling

Next, the Court examines whether Plaintiff qualifies for equitable tolling. "The doctrine of equitable tolling does not apply to [] state law claims, as the doctrine only tolls the statute of limitations with regard to federally created causes of action." Von Hoffmann v. Prudential Ins. Co. of Am., 202 F. Supp. 2d 252, 264 (S.D.N.Y. 2002). All of Plaintiff's claims are state law claims, Am. Compl. ¶¶ at 31–38, and the Court therefore cannot equitably toll any statute of limitations in this case.

### 3. *Equitable Estoppel*

Next, the Court reviews whether the statute of limitations should be equitably tolled.

"Under the doctrine of equitable tolling, a complainant may be allowed to file his or her claim

outside the applicable limitations period if, because of some action on the defendant's part, the

complainant was unaware that the cause of action existed." Long v. Frank, 22 F.3d 54, 58 (2d

Cir. 1994) (citing Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 60 (2d Cir. 1986)).

"Equitable estoppel is appropriate where the plaintiff is prevented from filing an action within

the applicable statute of limitations due to his or her reasonable reliance on deception, fraud or

misrepresentations by the defendant." Putter v. N. Shore Univ. Hosp., 858 N.E.2d 1140, 1142

(N.Y. 2006). "To invoke equitable estoppel, the plaintiff has 'to establish that subsequent and

specific actions by [the] defendant [ ] somehow kept [him or her] from timely bringing suit.'"

Robare v. Fortune Brands, Inc., 833 N.Y.S.2d 753, 755 (App. Div. 2007) (alterations in original)

(quoting Zumpano v. Quinn, 849 N.E.2d 926, 929 (N.Y. 2006)). "For the doctrine to apply, a

plaintiff may not rely on the same act that forms the basis for the claim—the later fraudulent

misrepresentation must be for the purpose of concealing the former tort." New York State

Workers' Comp. Bd. v. Fuller & LaFiura, CPAs, P.C., 46 N.Y.S.3d 266, 273 (App. Div. 2017)

(quoting Ross v. Louise Wise Servs., Inc., 868 N.E.2d 189 (N.Y. 2007)), lv. denied 2011 WL

4978965 (N.Y. 2011). Furthermore, "[t]he plaintiff bears the burden of showing that the action

was brought within a reasonable period of time after the facts giving rise to the equitable tolling

or equitable estoppel claim have ceased to be operational." Abbas v. Dixon, 480 F.3d 636, 642

(2d Cir. 2007) (internal quotation marks and citations omitted).

Here, Plaintiff claims that he detrimentally relied on statements about past practice information during his probationary period, which gave him the necessary assurances that he did not need to file a lawsuit. See Pl.'s Mem. of Law at 8–9. However, Plaintiff's equitable estoppel claim fails on the ground that he did not demonstrate that "he acted with the required due diligence in bringing an action 'after the facts giving rise to the estoppel have ceased to be operational.'" Horn v. Politopoulos, 628 F. App'x 33, 35 (2d Cir. 2015) (quoting Simcuski v. Saeli, 44 N.Y.2d 442, 450 (1978)). In fact, Plaintiff does not allege that Defendants continued to mislead him concerning his possible causes of action against them beyond what he learned during his probationary period in 2012. Moreover, when viewed in the light most favorable to Plaintiff, any deception, fraud or misrepresentations ceased in 2014, when Plaintiff began reaching out to various external government agencies because he "had not received any satisfaction from either the defendant or the labor union" and he "felt there was violations of federal law." Am. Compl. ¶ 27. Plaintiff was "on notice that something might be amiss" by that time, Ruso v. Morrison, 695 F. Supp. 2d 33, 48 (S.D.N.Y. 2010) (internal quotation marks and citation omitted), and he alleges no facts that plausibly suggest that he satisfied his duty to investigate the facts underlying his dispute. See also Harris v. Wilmorite Corp., 691 N.Y.S.2d 439, 440 (4th Dep't 1999) ("The doctrine of equitable estoppel will not apply if the plaintiff possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all relevant facts prior to the expiration of the applicable Statute of Limitations." (internal quotation marks and citation omitted)). As such, Plaintiff did not exercise due diligence in bringing the current Complaint.

### 4. *RLA Exhaustion*

Next, the Court analyzes whether the statute of limitations is tolled because Plaintiff

needed to exhaust the RLA procedures. The Supreme Court has already answered this question in

the negative. "[T]he pendency of a grievance, or some other method of collateral review of an

employment decision, does not toll the running of the limitations periods." Delaware State Coll.

v. Ricks, 449 U.S. 250, 261 (1980); see also Woodruff v. Nat'l R.R. Passenger Corp., No. 09-

CV-1709, 2009 WL 4930574, at *3 (S.D.N.Y. Dec. 21, 2009), aff'd, 403 F. App'x 624 (2d Cir.

2010) (citing Bates v. Long Island R.R. Co., 997 F.2d 1028, 1037 (2d Cir.1993) for the

proposition that a "grievance proceeding under Railway Labor Act does not toll statute of

limitations of discrimination claim"). Thus, Plaintiff's need to exhaust the RLA's grievance

mechanism did not toll the statute of limitations period or otherwise excuse his failure to timely

file his claims.

### 5. *Ledbetter Fair Pay Act*

Finally, the Court looks at the applicability of the Ledbetter Fair Pay Act to this case.

Even if the Ledbetter Fair Pay Act does apply to state law claims, see Whitt v. Kaleida Health,

298 F. Supp. 3d 558, 573 (W.D.N.Y. 2018) (collecting cases where courts have disagreed on the

Ledbetter Act's applicability), Plaintiff cannot rely on it in this case because the Amended

Complaint does not raise nor suggest any discrimination claims. Am. Compl. ¶¶ at 31–38. "The

Ledbetter Act makes it unlawful to apply a discriminatory compensation decision to an employee

and starts a new statute of limitations clock with each paycheck that reflects that decision." Davis

v. Bombardier Transp. Holdings (USA) Inc., 794 F.3d 266, 269 (2d Cir. 2015) (emphasis added);

see also Whitt, 298 F. Supp. 3d at 573 ("the [Ledbetter Act] has been found to apply to

<u>discrimination claims</u> brought under state and city law") (quoting <u>Williams v. Deutsche Bank</u>

<u>Grp.</u>, No. 151112/12, 2013 WL 1455924, at *6 (Sup. Ct. N.Y. County Apr. 4, 2013)) (emphasis

added). Without a discrimination claim, the Court cannot apply the Ledbetter Fair Pay Act to this

case.

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 32) is **GRANTED**.

Plaintiff's claims are **dismissed with prejudice**, and it is further

**ORDERED**, that the Clerk of the Court shall **CLOSE** this matter, and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      November 17, 2021
            Albany, New York



Lawrence E. Kahn
U.S. District Judge